IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-103-BO

| | |
|---|---|
| CVM HOLINGS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GAMMA ENTERPRISES, INC., )<br>d/b/a ORIENTAL EXPRESS, )<br>)<br>Defendant. )<br>_____) | O R D E R |

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction and Plaintiff's Motion to Dismiss Counterclaims. Plaintiff CVM Holdings, LLC, requests preliminary equitable relief directing Defendant Gamma Enterprises to vacate real property. Gamma Enterprise's counter-claims allege the right to remain in the property and the right to damages for improvements to the property. For the reasons set forth herein, Plaintiff's Motions for Preliminary Injunction is DENIED, and Plaintiff's Motion to Dismiss is GRANTED in part and DENIED in part.

## INTRODUCTION

Plaintiff CVM Holdings, LLC, (hereinafter "CVM") is the owner and operator of the Crabtree Valley Mall in Raleigh, North Carolina. Defendant Gamma Enterprises, Inc., (hereinafter "Gamma") operates the Oriental Express restaurant in space leased from CVM in the food court of the Crabtree Valley Mall.

On October 1, 1984, CVM and Gamma first entered into a lease agreement for Space #

2035, also known as Space No. U203 (the "Premises"), which consists of a restaurant storefront and food preparation space. On October 3, 2001, CVM and Gamma entered into a Fourth Amendment of the Lease, providing for a lease term to expire in March 31, 2010. In 2005, CVM and Gamma began negotiations for further extension of the lease, but no extended lease agreement was eventually executed.

CVM originally brought this action in Wake County Superior Court. By an Order dated February 25, 2010, the Wake County Superior Court denied CVM's Motion for a Temporary Restraining Order. Gamma removed this action on March 17, 2010, and CVM moved for a preliminary injunction in this Court on March 23, 2010. Gamma responded on April 18, 2010. CVM replied on April 26, 2010. A hearing was held in Raleigh, North Carolina, on the Motion for Preliminary Injunction on April 27, 2010. CVM filed the instant Motion to Dismiss on April 7, 2010. Gamma responded on May 3, 2010. CVM replied on April 15, 2010. These Motions are now ripe for ruling.

## DISCUSSION

### I. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, 2010 WL 1641299 (U.S. April 26, 2010) (recognizing that the standard set forth in *Winter* supplants the previous standard in the 4th Circuit set forth in

*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977)).

"[W]hile *Winter* articulates four requirements, each of which must be satisfied as articulated, *Blackwelder* allows requirements to be conditionally redefined as other requirements are more fully satisfied so that 'grant[ing] or deny[ing] a preliminary injunction depends upon a 'flexible interplay' among all the factors considered ... for all four [factors] are intertwined and each affects in degree all the others.'" *The Real Truth About Obama*, 575 F.3d at 347 (quoting *Blackwelder*, 550 F.2d at 196). Thus, CVM must show that it has independently satisfied each of the four conditions for obtaining preliminary relief set forth in *Winter* in order to obtain preliminary injunctive relief.

CVM is likely to succeed on the merits and obtain the remedy of ejectment in this case. The parties agree that the current lease on the Premises expired on March 31, 2010. Gamma claims that it has the right to remain on the premises based on a series of letters and negotiations for the formation of a new lease. In order to create a binding contract, the parties "must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Boyce v. McMahan*, 285 N.C. 730, 734 (1974). Gamma urges the Court to interpret these exchanges between CVM and Gamma as a contract for lease of the Premises. But "a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness." *Id.* And Gamma is unlikely to prevail in light of the opinion of the North Carolina Court of Appeals in *Computer Decisions, Inc. v. Rouse Office Management of North Carolina*, 124 N.C. App. 383, (1996), holding that an oral agreement that had settled the

material terms of a lease and an exchange of draft leases did not amount to a sufficient writing to satisfy the statute of frauds. Thus, this Court concludes that CVM is likely to prevail on the merits because the exchanges averred to by Gamma are not likely to result in an enforceable contract for the possession of the Premises.

CVM has also demonstrated that it is likely to suffer irreparable harm in the absence of preliminary relief. "Real estate has long been thought unique, and thus, injuries to real estate interests frequently come within the ken of the chancellor." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907 (1st Cir. 1989). And CVM is in the business of managing and leasing real property. Therefore, although the loss incurred by CVM may be small relative to the realty wherein the premises are located and the resources at CVM's disposal, the harm to CVM's interest in the possession of the premises at issue constitutes irreparable harm.

But CVM may not obtain preliminary relief in this matter because the balance of the equities does not tip in CVM's favor. CVM represented to Gamma that a new lease would be forthcoming if Gamma fulfilled several conditions including certain improvements to the Premises. Gamma incurred substantial expense by completing these improvements. CVM does not deny this conduct. Rather, counsel for CVM suggests that such allegations are more properly pled as a claim for unjust enrichment. But in light of such conduct that may well give rise to a claim in equity against CVM, this Court concludes that the balance of the equities does not tip in CVM's favor.

*Real Truth About Obama* makes clear that the party seeking preliminary equitable relief must satisfy the four factors set forth in *Winter* independently. 575 F.3d at 347. As such, this Court need not consider where the public interest lies. Because the balance of the equities does

not tip in CVM's favor, CVM's Motion for Preliminary Injunction is DENIED.

II. Motion to Dismiss

Gamma pleads counter-claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) negligent misrepresentation, (5) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 *et seq*, and (6) specific performance.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Attain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Although specificity is not required, a complaint must allege enough facts to state a claim to relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 544 U.S. at 1973.

A. Breach of Contract, Good Faith and Fair Dealing, and Specific Performance

CVM moves to dismiss Gamma's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance on the grounds that no contract existed between the parties. CVM is correct to note that *Boyce v. McMahan*, 285 N.C. 730 (1974), and *Computer Decisions, Inc. v. Rouse Office Management of North Carolina*, 124 N.C. App. 383, (1996) set forth a difficult standard for finding the existence of a contract that satisfies

the statute of frauds where the terms of the agreement are not set forth in a single executed writing. But although this Court noted above that CVM is likely to succeed on the merits and obtain possession of the premises when this matter reaches a conclusion, Gamma has stated a facially plausible claim for relief when the allegations set forth in Gamma's complaint are assumed to be true for the purposes of a motion to dismiss. Therefore, CVM's Motion to Dismiss is DENIED with respect to Gamma's claims arising out of the purported contract.

B. Estoppel

CVM moves to dismiss Gamma's claims for estoppel on the grounds that affirmative estoppel is not recognized in North Carolina. Promissory estoppel "has only been permitted in North Carolina for defensive relief and both North Carolina cases which recognized the doctrine involved the waiver of a preexisting right by a promisee." *Home Elec. Co. Of Lenoir, Inc. v. Hall and Underdown Heating and Air Conditioning Co.*, 68 N.C. App. 540, 543 (1987). And North Carolina has "never recognized it as a substitute for consideration." *Id.* But "a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement." *Brooks v. Hackney*, 329 N.C. 166, 173 (1991) (quoting *Advertising Inc. v. Harper*, 7 N.C. App. 501, 505 (1970)). Thus, although Gamma may not maintain a counter-claim for promissory estoppel to create a contract, Gamma may plead estoppel as a defense to ejectment. Therefore, CVM's Motion to Dismiss is GRANTED insofar as Gamma affirmatively pleads estoppel as a counter-claim, but this Court will construe Gamma's pleading of estoppel as a defense.

C. Negligent Misrepresentation and Unfair and Deceptive Trade Practices

The crux of CVM's Motion to Dismiss Gamma's counter-claims for negligent

misrepresentation and unfair and deceptive trade practices that it had no duty to disclose negotiations with other prospective tenants to Gamma.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988). CVM is correct to note that it had no duty to disclose negotiations with another prospective tenant. *Computer Decisions*, 124 N.C. App. at 389. But non-disclosure is not the sum of the alleged conduct. Rather, Gamma also pleads with particularity that it justifiably relied on specific representation made by CVM that the satisfaction of certain conditions including improvements to the Premises would result in a new lease.

N.C. Gen. Stat. § 75-1.1 provides that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "In order to prevail under this statute plaintiffs must prove: (1) defendant committed an unfair or deceptive act or practice, (2) that the action in question was in or affecting commerce, (3) that said act proximately caused actual injury to plaintiff." *Canady v. Mann*, 107 N.C. App. 252, 260 (1992). "Although it may be rare that the exercise of a contractual right will meet this stringent standard, it is possible for such an exercise, when it involves egregious or aggravating conduct, to constitute an unfair or deceptive trade practice under North Carolina's UTPA." *South Atlantic Ltd. P'ship v. Riese*, 284 F.3d 518, 539 (4th Cir. 2002).

CVM argues that committed no unfair or deceptive act because it had no duty to disclose negotiations to lease the Premises to another party to Gamma. But Gamma has nonetheless stated a claim for unfair and deceptive trade practices by pleading additional facially plausible

allegations that CVM "made false representations regarding their intent to enter into a binding [contract] and the terms of that agreement" and that "these misrepresentations were intended to deceive and induce reliance and they resulted in injury." *Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F.Supp.2d 579, 594-95 (M.D.N.C. 2004).

In sum, Gamma sets forth facially plausible claims for both negligent misrepresentation and unfair and deceptive trade practices supported by the allegations that CVM induced Gamma to make substantial improvements to realty by the promise of a new lease and affirmatively approving of Gamma's plans for substantial improvements to the realty while secretly negotiating with another party. Therefore, Defendant's Motion to Dismiss is DENIED with respect to Gamma's counter-claims for negligent misrepresentation and unfair and deceptive trade practices.

### D. Unjust Enrichment

It should also be noted that the facts pled in support of Plaintiff's claims for negligent misrepresentation and unfair and deceptive trade practices also set forth a claim for unjust enrichment. As the Supreme Court of North Carolina explained in *Wright v. Wright*, 305 N.C. 345, 351 (1982), a cognizable claim for unjust enrichment arises where a tenant makes improvements to realty "under the inducement of the owner's unenforceable promise to convey the land or an interest therein to the improver."[1] Because Gamma alleges that CVM obtained

---

[1] It should be noted that no betterments claim may be maintained in this case because Gamma occupied the property as a tenant rather than a claimant to title. "The right to betterments is based upon the obvious principal of justice that the owner of land has no just claim to anything but the land itself, and fair compensation for damage and loss of rent. If the claimant, acting under an erroneous but honest and reasonable belief that he is the owner, makes valuable and permanent improvements, the true owner should not take them without compensation." *Sweeten v. King* 29 N.C.App. 672, 677 (1976) (quoting *Pritchard v. Williams*,

substantial improvements to realty by such inducement, Gamma has stated a facially plausible claim for unjust enrichment.

## CONCLUSION

Therefore, Plaintiff's Motion for Preliminary Injunction is DENIED. And Plaintiff's Motion to Dismiss is GRANTED in part and DENIED in part. Defendant's counter-claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) negligent misrepresentation, (5) unfair and deceptive trade practices, and (6) specific performance may proceed. Defendant's counter-claim for estoppel claim is DISMISSED.

SO ORDERED, this _21_ day of June, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

176 N.C. 108, 96 S.E. 733 (1918)). "Claims founded on unjust enrichment must be distinguished from defensive rights arising under the betterments statute, G.S. 1-340. Under this statute one who, under colorable title and in a good faith but mistaken belief that he has good title, makes improvements on land is entitled to compensation for the enhanced value of the land due to the improvements when he is ejected by the true owner." *Wright*, 305 N.C. 354 at n. 5. A party may not recover for betterments under N.C. Gen. Stat. § 1-340 where improvements to realty were made "not under any color of title, but while he was a tenant." *Hackett v. Hackett*, 31 N.C.App. 217, 220 (1976), *rev. denied*, 291 N.C. 448 (1976).

-9-